83 F.3d 426
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Javier BARRAZA, Petitioner-Appellant,
v.
James GOMEZ, Director of Corrections for the State of
California,** Respondent-Appellee.
 No. 94-16304.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 11, 1996.*
Decided April 16, 1996.
 
 1
 Before: SNEED and BEEZER, Circuit Judges, and QUACKENBUSH, District Judge.***
 
 
 2
 MEMORANDUM****
 
 
 3
 Javier Barraza appeals the district court's denial of his petition for writ of habeas corpus.
 
 
 4
 In July 1982 in the Superior Court for Santa Clara County, a jury convicted Barraza and his co-defendant, Raul Navar, of second degree murder in the shooting death of sixteen-year-old Steven Valenzuela. After denying a motion for new trial, the state court sentenced Barraza to 15 years to life in prison. State appellate courts affirmed the conviction and sentence, and Barraza filed a petition for writ of habeas corpus in the federal district court. The district court denied the petition on June 13, 1994. Barraza timely appeals. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, and we affirm.
 
 
 5
 * Barraza argues that juror misconduct denied him due process. During deliberations, jurors read a newspaper article discussing his brother's involvement in a shooting incident. One juror commented to the effect that "Mrs. Barraza should have drowned the whole litter."
 
 
 6
 In denying his motion for a new trial, the state trial court examined juror affidavits regarding the alleged misconduct. The court determined without conducting a hearing that the jurors discussed an article about Barraza's brother during deliberations. The court found that jurors did not technically violate its instructions by reading the article, but did commit misconduct by discussing it. The court concluded, however, that the misconduct was harmless.
 
 
 7
 The state court's findings of historical fact are entitled to the presumption of correctness under 28 U.S.C. § 2254(d). The application of federal constitutional standards to those facts, however, is a mixed question of law and fact reviewed de novo. Hughes v. Borg, 898 F.2d 695, 699 (9th Cir.1990).
 
 
 8
 Defendants enjoy a Sixth Amendment right to an impartial jury that will consider only the evidence presented in court. Bayramoglu v. Estelle, 806 F.2d 880, 887 (9th Cir.1986). For juror misconduct to compel collateral relief,[1] it must have "had substantial and injurious effect or influence in determining the jury's verdict." Jeffries v. Wood, 75 F.3d 491, 494 (9th Cir.1996) (quoting O'Neal v. McAninch, --- U.S. ----, 115 S.Ct. 992 (1995); Brecht v. Abrahamson, 507 U.S. 619, ----, 113 S.Ct. 1710, 1718 (1993)). If left with "grave doubt" whether the error had substantial influence over the verdict, a court must grant collateral relief. Id.
 
 
 9
 In reviewing Barraza's habeas petition, the district court applied the factors emphasized in Bayramoglu v. Estelle, 806 F.2d at 887, noting that the material was received by jurors, was available to them for a significant period, was actually discussed by jurors and was introduced before a verdict was reached. The court found that "the extrinsic material could have affected the verdict. The offending comment buttresses this conclusion."
 
 
 10
 Under Brecht v. Abrahamson, however, the misconduct could not have had "a substantial and injurious effect or influence" on the jury's verdict due to the lack of any plausible connection between the extraneous material and the case. The article concerned Barraza's brother, not Barraza. It therefore did not fall within the court's admonition to the jury that it not consider outside materials concerning the case. The improper comment by one juror, while crass and arguably racially charged, does not overshadow the very limited relevance of the article itself.
 
 
 11
 It is not appropriate for a reviewing court to assume that members of the jury seriously considered the actions of Barraza's brother to reflect on Barraza. See United States v. Bagnariol, 665 F.2d 877, 888 (9th Cir.1981) (jury presumed to be rational), cert. denied, 456 U.S. 962 (1982). The state trial court here instructed the jury not to consider evidence for the improper purpose of evaluating the defendant's character, and the jury is presumed to have followed the instructions. Zafiro v. United States, 506 U.S. 534, 540 (1993). Indeed, if the jury desired to engage in improper discussions of character, Barraza's own actions during the incident at issue reflected much more seriously on his character than did his brother's later activity.
 
 
 12
 As the district court concluded, the evidence presented in the state trial was overwhelming. The evidence at trial showed that Barraza told another gang member to go and get the rifle. Then, as the confrontation escalated, he told Navar to shoot. We find no substantial and injurious effect on the verdict arising from the article or the juror's comment.
 
 
 13
 Barraza also contends that the district court should have granted him an evidentiary hearing. Trial courts' factual inquiries concerning claims of juror misconduct, however, are confined to "determining the extent, if at all, to which jurors saw or discussed the extrinsic evidence." Jeffries, 5 F.3d at 1191. The trial court reviewed affidavits and concluded that the article was read and discussed by at least two jurors. No further evidence would have been available or helpful to the district court, which did not abuse its discretion in denying an evidentiary hearing. Rice v. Wood, 44 F.3d 1396, 1403 (9th Cir.) (abuse of discretion review), vacated in part on other grounds, Nos. 93-99011, 93-99012 (9th Cir.1995) (en banc).
 
 
 14
 We affirm the district court judgment denying the juror misconduct claim.
 
 II
 
 15
 Barraza contends that the absence of a portion of the transcript denied him due process. The parties entered before the California appellate court a settled statement indicating that they could not reconstruct what had occurred on the day in question, other than to make assumptions based upon the clerk's transcript. The appellate court found no good cause for reversal.
 
 
 16
 The district court correctly stated that Barraza failed to "identify any tenable theory of possible prejudice" arising from the lack of transcript. The transcript covered a day of deliberations during which the jury requested and the court sent to it a yardstick and some chalk. The jury had already been charged, and the clerk's minutes reflect only a conversation between the court and counsel. They do not reflect requests for further instructions.
 
 
 17
 Even under the generous and arguably inapplicable new rule[2] of Madera v. Risley, 885 F.2d 646, 648 (9th Cir.1989), Barraza has not shown that the lack of the transcript resulted in a denial of due process. He has not demonstrated "the value of the transcript ... in connection with the appeal...." 885 F.2d at 648. We affirm the district court on this issue.
 
 III
 
 18
 Barraza next argues that the instruction on aiding and abetting failed to sufficiently define the necessary intent. Defective jury instructions result in constitutional violations when, taken in context of all the instructions and the evidence, they render "the trial so fundamentally unfair as to violate federal due process." Duckett v. Godinez, 67 F.3d 734, 745 (9th Cir.1995), petition for cert. filed, No. 95-7812 (February 5, 1996).
 
 
 19
 The state trial court instructed the jury that those who "advise and encourage, or command" the commission of a crime are regarded as principals. A separate instruction stated that a person aids and abets if that person has "the intent to facilitate the commission of the crime...." It added that mere presence or mere knowledge of and failure to prevent the crime are not sufficient for liability as a principal.
 
 
 20
 Under California law, a person qualifies as a principal when he shares the purpose of the perpetrator: knowing the full extent of the perpetrator's criminal purpose and giving aid or encouragement with the intent of facilitating the crime. People v. Beeman, 35 Cal.3d 547, 560 (1984). He need not share the perpetrator's specific intent, and his liability extends to all natural and foreseeable consequences of the perpetrator's acts. Id.
 
 
 21
 The jury expressed confusion over the definition of "intent." Barraza argues that the instructions allowed the jury to convict him without finding that he had the intent to facilitate second degree murder.
 
 
 22
 Taking the instructions as a whole and in the context of the evidence, the instructions concerning aiding and abetting did not render the trial fundamentally unfair. The explicit requirement of intent to facilitate the crime appears above and below "advise and encourage, or command," and a person could hardly "advise and encourage" without sharing the criminal purpose of the perpetrator. Further, the jury asked for clarification about the word "intent" and not the phrase "advise and encourage, or command," implying that it was not overly focused on that phrase. It is the only phrase in the instructions that arguably leaves out the required intent. The court instructed the jury not to single out any certain sentence or any individual point or instruction to the exclusion of any other.
 
 
 23
 In addition, the evidence did not allow for a question whether Barraza shared Navar's purpose. As the district court noted, nothing in the record indicated that Barraza failed to understand the consequences of his order to "Shoot."
 
 
 24
 Barraza contends that the prosecutor's argument exacerbated the harm of the jury instructions. The arguments of counsel are generally accorded less weight by the jury than the court's instructions and must be judged in the context of the entire argument and the instructions. Boyde v. California, 494 U.S. 370, 384 (1989). The prosecutor argued in closing that Barraza's command to "[g]o get the [rifle]" was in itself sufficient proof of aiding and abetting, and that Barraza obviously intended to make the statement. In the context of the instructions on aiding and abetting, the jury could not have agreed with this simplistic argument. Even under the most infirm instruction, the jury had to find that Barraza "advise[d] and encourag[ed]" the commission of the crime. Retrieving a firearm was not the crime charged; firing it was. Given the situation in the courtyard, Barraza's order to shoot proved his intent to facilitate second degree murder.
 
 
 25
 We will not presume that the jury ignored the instructions and rendered an irrational verdict. The evidence supported the verdict, and the instructions did not render the trial fundamentally unfair.
 
 IV
 
 26
 Barraza claims that the jury instruction on second degree murder omitted the requirement that he have an awareness of a duty not to commit the forbidden act. The formulations in the instruction given have been endorsed by the California Supreme Court "as the correct statement of California's implied malice requirement." Masoner v. Thurman, 996 F.2d 1003, 1007 (9th Cir.), cert. denied, 114 S.Ct. 643 (1993). In addition, pursuant to Barraza's request, another instruction contained the specific language he argues was required. The instructions, taken as a whole, were therefore not constitutionally deficient as to the element of malice. Duckett v. Godinez, 67 F.3d at 745.
 
 
 27
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision on the briefs and record, without oral argument. Fed.R.App.P.34(a); 9th Cir.R. 34-4
 
 
 **
 Director Gomez has been substituted for his predecessor in office, James K. Rowland, pursuant to Federal Rule of Appellate Procedure 43(c)(1)
 
 
 ***
 The Honorable Justin L. Quackenbush, Senior District Judge, Eastern District of Washington, sitting by designation
 
 
 ****
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Although the Supreme Court announced this relaxed harmless error standard for collateral relief in 1993, Brecht v. Abrahamson, 507 U.S. 619, ----, 113 S.Ct. 1710, 1722 (1993), the district court did not apply it
 
 
 [2]
 Teague v. Lane prohibits the application of "new constitutional rules of criminal procedure ... to those cases which have become final before the new rules are announced." 489 U.S. 288, 310 (1989) (plurality opinion)