UNITED STATES of America, Plaintiff,

v.

PROPERTY IDENTIFIED AS LOT NUMBERED 718, et al., Defendants.

No. CIV. A. 96–2100–LFO.

United States District Court, District of Columbia.

Nov. 5, 1997.

As Corrected Nov. 24, 1997.

William R. Cowdeen, Asst. U.S. Atty., Washington, DC, for U.S.

Marvin D. Miller, Alexandria, VA, for Defendants.

### MEMORANDUM AND ORDER

OBERDORFER, District Judge.

Currently pending are plaintiff's Motion for Summary Judgment and claimant's Motion to Dismiss. The latter alleges that the United States failed to give claimant Kimberly Honesty notice and a hearing prior to "seizing" the defendant properties, in violation of the Fifth Amendment's due process clause and *United States v. James Daniel Good Real Property*, 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993). The parties agree that the United States filed and served a complaint and a warrant on the properties in September 1996; that the United States filed *lis pendens* notices in accordance with Maryland law at around the same time; and that Kimberly Honesty has lived at one of the properties otherwise undisturbed since the commencement of this lawsuit. Because claimant's motion raises the unsettled legal question of what constitutes a governmental seizure requiring notice and a predicate hearing, additional evidence is required for a decision.

### I.

In essence, claimant makes three arguments in favor of dismissal. First, she contends that the execution of an *in rem* arrest warrant on the defendant properties constitutes a "seizure" under *Good Real Property*. She notes that the warrant "command[ed]" the U.S. Marshal "to attach the defendant property and to detain it in [its] custody. . . ." Warrant of Arrest In Rem (Sept. 10, 1996). For support, she relies principally on an Eleventh Circuit ruling, *United States v. 408 Peyton Road, S. W.*, 112 F.3d 1106 (11th Cir.1997), which charged the government with an unconstitutional ex parte seizure based alone on the execution of an *in rem* arrest warrant, absent a physical taking. This is a question of first impression in this Circuit.

Second and independently, claimant argues that the government's use of *lis pendens* notices constitutes a "seizure" under *Good Real Property*. She contends that United States failed to make "a proper showing in district court" of its need to prevent the sale of her properties. *Good Real Property*, 510 U.S. at 58, 114 S.Ct. at 503. Moreover, she argues that the United States has obstructed her efforts to use the proceeds from the sale of one defendant-res in this case (an undeveloped lot known as "Burleigh Manor") to meet her mortgage payments on the second defendant-*res* (her residence, known as "Jones Bridge Road"). As a result, her lender has initiated foreclosure proceedings on the Jones Bridge Road residence. She also charges that, after the United States obstructed her efforts to sell the residence, it offered to prevent the foreclosure if she settled this lawsuit. She argues, "This is clear and convincing evidence of the fact that the government has seized the property and asserted control over it." Claimant's Reply to Pl.'s Opp. to Mot. to Dismiss, at 2.

Third, claimant argues that the appropriate remedy for an unconstitutional seizure under *Good Real Property* is dismissal, as distinguished, for example, from a stay of further government actions pending a due process hearing. The Supreme Court has never addressed this question of remedy. *See Good Real Property*, 510 U.S. at 65, 114 S.Ct. at 506 (remanding case "for further proceedings"). Consequently, claimant turns to the Eleventh Circuit's *Peyton Road* ruling and the Eighth Circuit's judgment in *United States v. One Parcel of Real Property Located at 9638 Chicago Heights*, 27 F.3d 327 (8th Cir.1994), both of which apply *Good Real Property* to dismiss the underlying forfeiture

actions. Claimant's contention raises another question of first impression here.

## II.

■ Several of claimant's contentions can be dismissed summarily, without further fact finding. Some of the law enforcement measures that Kimberly Honesty characterizes as "seizures" enjoy the express imprimatur of the Supreme Court and do not implicate her due process rights. The Court in *Good Real Property* endorsed the government's right to file *exparte* a notice of *lis pedens* "to ensure that the property not be sold ... prior to the forfeiture judgment," 510 U.S. at 58, 114 S.Ct. at 503, even while it cautioned generally against the deprivation of "valuable rights of ownership, including the right of sale." *Id.* at 54, 114 S.Ct. at 501. The government can take such action "without seizing the subject property," *id.* at 58, 114 S.Ct. at 503, and thereby without triggering the due process rights to notice and a hearing.[1] Thus, the mere fact that the Government contacted Honesty's real estate agent and "informed him that there was a federal case against the property," Honesty Aff., at ¶ 10, does not provide grounds for dismissal.

■ Moreover, in *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 679, 94 S.Ct. 2080, 2089, 40 L.Ed.2d 452 (1974), the Court upheld the *ex parte* seizure of property "that could be removed to another jurisdiction, destroyed, or concealed, if advance warning of confiscation were given." *See also Good,* 510 U.S. at 52, 114 S.Ct. at 500 (interpreting *Calero–Toledo* ). The holding in *Good Real Property* is explicitly limited to the seizure of real property. *See id.* at 57, 114 S.Ct. 492. Consequently, Honesty cannot protest the seizure of cash proceeds from the sale of Burleigh Manor even if it deprives her of resources to meet her mortgage obligations on her residence at Jones Bridge Road. While she may face eviction if her lender forecloses on the residence, that "seizure" by a strictly private actor does not trigger the due process clause.

## III.

The United States evidently does not think much of Honesty's other arguments for dismissal either. But even assuming (without deciding) that the execution of an *in rem* arrest warrant is not a "seizure," and that the remedy for an unconstitutional seizure is not dismissal in any event, Honesty's remaining factual allegations merit closer attention. It remains an open question what government acts in the nature of an exercise of "dominion and control," *United States v. Causby,* 328 U.S. 256, 267, 66 S.Ct. 1062, 1068, 90 L.Ed. 1206 (1946), short of a physical taking but beyond the posting of an arrest warrant and the filing of *lis pendens,* constitute a *Good Real Property* seizure. If the United States used its lis pendens notice on the Jones Bridge Road residence to induce Honesty to settle her Burleigh Manor claim-rather than strictly "to ensure that the property not be sold ... prior to the forfeiture judgment," *id.* 58, 114 S.Ct. at 503—it is at least arguable that Honesty suffers a due process violation and is entitled to some form of remedy.

In court on October 6, the United States represented that it would likely drop its charge against the Honesty residence if it prevailed against Burleigh Manor. According to Honesty, the government is using that charge in conjunction with the prospect of a bank foreclosure on the residence to pressure her to settle. She alleges,

> The federal government ... agreed to let the mortgage company sell the property but would have stopped them from making the sale if I had entered into an agreement with them about this case. I did not agree to their terms and so they were going to allow the mortgage company to sell.

---

1. Contrary to Honesty's reading, nothing in *Good Real Property* suggests that the government must demonstrate in district court the particular necessity of a *lis pendens* notice prior to filing. The passage on which claimant relies relates quite clearly to the alternative remedy of a restraining order: "If there is evidence, in a particular case, that an owner is likely to destroy his property when advised of the pending action, the Government may obtain an ex parte restraining order, or other appropriate relief, *upon a proper showing in district court." Good Real Property,* 510 U.S. at 58, 114 S.Ct. at 503(emphasis added).

Honesty Aff., ¶ 17. Her attorney relies on a letter, purportedly from counsel for the Jones Bridge Road mortgagee, to verify this claim. It reads, "[P]lease be advised that we have been in contact with the U.S. Attorney's Office, and they have agreed to release their claim to this property so that we may proceed with the foreclosure sale." Letter from Dore to Miller of 9/16/97, *filed on Nov. 4, 1997.*

These allegations, if true, suggest that the United States is using the notice of *lis pendens on* the Honesty residence not to preserve jurisdiction as the forfeiture case against the property proceeds, but as a bargaining chip in a second property dispute. Indeed, it would seem that the government has exhibited little interest in forestalling the transfer of the residence *but for* Honesty's own desire to prevent foreclosure. Its conduct may go beyond the use of *lis pendens* that the *Good Real Property* Court envisioned and approved to become tantamount to the kind of "seizure" that requires notice and a predicate hearing.

The United States rebuts both the substance and the legal implications of Honesty's allegations. In court on October 29 the government challenged claimant's interpretation of the lender's letter, denying that it had exercised impermissible power over the mortgage foreclosure sale and hence the underlying property. The mortgage, it noted, preceded this lawsuit and therefore established a lien on the residence superior to its own *lis pendens.* The government alleges that it offered only "to talk [the mortgagee] into postponing their foreclosure sale so that [Honesty] would have an opportunity to sell [the residence]" in exchange for a settlement of the Burleigh Manor claim as a demonstration of "some good faith." Tr. of Mot. Hearing., at 3 (Oct. 29, 1997).

It remains to be seen whether the government offered to abandon its claim against the Jones Bridge Road residence in consideration for claimant's agreement to give up whatever claim she might have to the cash proceeds from the Burleigh Manor sale; and, if so, whether it was doing more without a predicate hearing than *Good Real Property* contemplated, for example, by "us[ing] the

threat of lis pendens as leverage in negotiations...." Janice Gregg Levy, Comment, *Lis Pendens and Procedural Due Process: A Closer Look After Connecticut v. Doehr,* 51 MD. L. REV. 1054, 1060 (1992).

A decision as to whether the government exceeded its limited *lis pendens* rights, as defined in *Good Real Property,* so as to exercise the functional equivalent of dominion and control over Honesty's property requires a factual determination of the representations it made to the mortgagee and to Honesty. An evidentiary hearing to receive testimony and documents on these issues- *and only these issues*-is warranted. The parties will also have the opportunity to submit supplemental memoranda on the legal consequences of the mortgagee's efforts to foreclose and the government's reaction thereto.

With respect to the forthcoming hearing, the parties may wish to consider the government's legal authority over the mortgagee's lien. The government arguably could affect an otherwise unfettered sale of claimant's property by requiring the lender to post a bond to secure the release of the Jones Bridge Road residence from its custody. *See In re Newport Savings & Loan Ass'n,* 928 F.2d 472, 479 (1st Cir.1991). Moreover, even if the government required no bond, "as a practical matter, it may be impossible to find a buyer at a foreclosure sale for property ... to which the United States asserts a legal claim." *Id.* at 474. This is because "an interest in property acquired while litigation affecting title to that property is pending is taken subject to the results of that pending litigation." *DeShields v. Broadwater,* 338 Md. 422, 659 A.2d 300, 305 (1995). By allegedly offering to waive its claim against the Jones Bridge Road residence, the United States may have substantially enhanced the marketability of the property and consequently the likelihood that a foreclosure sale would occur. On the other hand, as a matter of law, the government would also appear to be correct: It had no purely legal right to prevent the foreclosure sale from occurring. *Cf Shelden v. United States,* 7 F.3d 1022, 1028 (Fed.Cir.1993) (holding only that mortgagee could not foreclose property once gov-

 

ernment prevailed in forfeiture action). If, for example, the price were low enough to reflect the risk of ultimate forfeiture, there would be no legal bar to the sale to a buyer willing to assume that risk at that price.

## IV.

As a final matter, Honesty filed a last-minute Motion to Strike Immaterial Portions of Pleading on the grounds that the government's response to her affidavit of October 16 contains "scurrilous recitation of immaterial and impertinent matters." Mot. to Strike, at 3. On October 6, both parties were instructed to limit their filings to the narrow factual question of Honesty's current ownership interests in her residence. Admittedly, the government's response may have skirted these boundaries by recharacterizing the legal claims upon which it relies. However, it was hardly "scandalous," Fed.R.Civ.P. 12(f), "bear[ing] no possible relationship to the controversy." *Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 664 (7th Cir. 1992). Indeed, Honesty's motion to strike must be denied because it commits the equally objectionable sin of frivolity.

\*     \*     \*     \*     \*     \*

Accordingly, it is this 5th day of November 1997 hereby

ORDERED: that plaintiff's Motion for Summary Judgment remains under advisement pending resolution of claimant's Motion to Dismiss; and it is further

ORDERED: that on or before *November 17,1997* claimant may file a supplemental memorandum in support of its Motion to Dismiss, identifying with documentary evidence and testimonial affidavits the actions taken by plaintiff that arguably exercised the functional equivalent of dominion and control over claimant's property in connection with the then impending foreclosure; that on or before *December 1, 1997* plaintiff may file a reply; and it is further

ORDERED: that an evidentiary hearing to receive *relevant* testimony and documentary evidence on the same question is scheduled for *Monday, December 8.1997. at 2:00 pm in Courtroom 3;* and it is further

ORDERED: that claimant's Motion to Strike Immaterial Portions of Pleading is DENIED.